May it please the Court, Rachel Harris for Petitioner Appellant Jose Marvin Cruz. I'd like to reserve two minutes of my time for rebuttal, please. Just watch the clock, Counsel. Yes. Mr. Cruz, a lawful permanent resident of this country, has been ordered removed based on guilty pleas to two nonviolent crimes. He's been ordered removed to El Salvador, a place where he has no family, no friends, and where he hasn't been in over 30 years. It's a place where the human rights abuses are well known and well documented, and it's a place where Mr. Cruz has proven that he's more likely than not to be tortured or persecuted by the national police, by government officials, and by the parties to whom the government has acquiesced if the order of removal is upheld. That's simply something this country doesn't do. No matter what the political debate on immigration, no matter what side people take, we don't remove people to countries where they're going to be tortured by government officials. Excuse me, Counsel. One of those convictions is attempted grand larceny. Do you agree that's an aggravated felony? We're not disputing that order of removal, no, Your Honor. And so removal is not – you're not disputing removal. You concede that your client was – is removable based on the attempted grand larceny conviction, which is an aggravated felony? We're not disputing that, yes, Your Honor. Okay. Nonetheless, the BIA's decision must be reversed on three separate counts. First, the BIA's denial of Mr. Cruz's request for relief under the Convention Against Torture is not supported by substantial evidence. The only question before this Court is whether, on the record, Mr. Cruz has proven that he's more likely than not to be tortured by a government official. And the answer is unequivocally yes. Mr. Cruz has provided testimony, credible testimony, and corroborating evidence that supports his claim. In fact, the totality of the record, the testimony that's been found, that must be presumed to be credible, and the corroborating evidence compels this Court to reverse. The IJ did not make an adverse credibility finding. We have credible testimony from Mr. Cruz. The government hasn't disputed that. They don't dispute that there was not an adverse credibility finding. They don't dispute that Mr. Cruz's testimony has to be deemed credible in this case. And so that's where we start. Mr. Cruz has testified that he has a tattoo on his left hand that is a gang tattoo. He's testified that he's been labeled as a gang member. He's also credibly testified that he has never joined a gang. He's never committed any of the violent criminal activity that's associated with gang membership. That goes unrebutted. He's also testified that if removed to El Salvador, that criminal record, that suspected gang member status, that's going to follow him. And that once he gets there, the national police are going to be alerted to this. They're going to register him, they're going to photograph him, and that's going to alert the national police to his status in the country. And then that's not where it ends. The national police are going to seek him out. Mr. Cruz has testified they will seek him out, they will seek to torture him, they will seek to kill him. He's testified to all of this. And he's also testified that the death squads that are still alive and well in El Salvador will also seek him out to kill him. Roberts. Okay. Let's back up to the question of what the government officials will do. The fact that Mr. Cruz has testified that he fears official government persecution is, of course, not necessarily evidence that the government is interested in persecuting him. So what evidence does he have that the government will be interested in him? You're correct. We don't look at just Mr. Cruz's testimony. There's evidence in the record. First, we have the 2007 country report. That details a specific instance that the government tortured an individual similar situated to Mr. Cruz, a suspected gang member. And it's not just that example. There's other articles in the record and the country reports that detail the general anti-gang sentiment in El Salvador. We have the Monodora laws, the anti-gang laws. Those are on the books. They were just renewed in September. There is a fierce anti-gang sentiment in El Salvador, and Mr. Cruz is going to be harmed by this. So you have that. You have the country report. You have the State Department report. I'm sorry. The evidence in the country report is one incident in, did you say 2007? It's from the 2007. 2007, I think, was the report. Yes. Okay. And it related to one incident. Do we have any knowledge about the details of what kind of a gang member this was or what he was a gang member, whether it was a tattoo on his hand that the government identified him by? The report states that he was a suspected gang member, not that he was a gang member, but that he was a suspected gang member. We have that. We also have the BIA's decision from Mr. Perez's case. Another example where we have someone who is almost identically situated to Mr. Cruz. He is a suspected gang member. He does have a gang tattoo. He does have a criminal record that labels him as a gang member. He goes back to El Salvador. He's registered. He's photographed. And the national police, they amputate his arm. They find him. They seek him out. And the BIA decision says because he was a suspected gang member, and they amputate his arm. So it's not just Mr. Cruz's testimony. It's the testimony. It's in combination with the corroborating evidence. And the BIA's decision, to the opposite effect that Mr. Cruz hasn't met his burden, it's simply not supported by substantial evidence. Now, are we arguing social group as well, or is this based on a focused likelihood of torture? We've argued both, Your Honor. So we've argued torture. We also argue particular. But do you have a stand-alone argument on torture, or does it have to be by virtue of being in the social group? No, it's a stand-alone argument, Your Honor. But Mr. Cruz does have to show that he's going to be singled out because of something specific. We're not stating that Mr. Cruz is generally going to be subject to the human rights abuses that are in El Salvador. We don't argue that that's enough. It's not that he's in a particular social group, but he has these markings. And he has the markings and he has the label. And it's this – it doesn't have to be a social group under the INA, a particular social group as defined by the statute. For torture, he just has to show – we're just showing that he's going to be tortured because of his gang tattoo and his label – his label as a suspected gang member. But there's a separate and distinct reason why the CAT claim – the BIA's CAT claim must be reversed. The procedure is simply flawed. If you're not relying on social group identity, that is – generally, that is, that all gang members who return to El Salvador will be persecuted by the national police, What evidence do we have as to, for example, his particular affiliation with this particular gang? What is the gang that he is affiliated with? It's the Mara Salvarucha. Okay. So it's the MS-13. Yes, MS-13, yes. And do we know how the – is there specific evidence in the record about how the Salvadoran police treat MS-13 members? There's evidence in the record of how they treat these violent gang – these suspected violent gang members in general. MS-13 is a prominent Salvadoran gang, and there are articles in the record. If you look on, I think, pages 213 of the record, 203, those are instances where there's specific instances of collaboration between U.S. officials and between El Salvadoran officials that – and they're targeted at these suspected gang members that are going between borders. Excuse me, Counselor. Is your social group not former gang members but someone who's falsely believed to have been in a gang but, in fact, never was a member of a gang? That's mostly correct, Your Honor. It's not former gang members. We don't state that he has ever been in a gang. In fact, the evidence suggests that he is not – has never been in a gang, and there's nothing to dispute that. And so then is the social group that he'll be falsely believed to have been in a group that he never was in the group and be persecuted because – or tortured because they'll mistakenly believe that he was in a group that he never was? Is that the argument? That's the argument, and it combines more than that, though. It's the tattoo. It's the specific label of the gang member on that parole report that's going to go back with him to El Salvador. And while social – while defining that particular social group is critical to the claim under the INA, it's not critical that that social group is defined under the CAT. The CAT claims don't need a specific social group under the INA for Mr. Cruz to obtain relief on that. So when we're looking at the CAT claim, you know, we have the merits of the case, and the BIA simply got it wrong there. But they also have a flawed procedure. The BIA's decision related to CAT is one cursory paragraph. The BIA is obligated to look at all the evidence that's relevant to torture, all of it, not the evidence that they want to look at, not the evidence that they deem most relevant. They have to look at all the evidence. Counsel, if we were to adopt your argument, what is the difference between the argument that you have made and the social group argument that you said you were not relying on today? If we adopt your argument, isn't everybody who is a Salvadoran who has some kind of indicia of gang affiliation entitled to remain in the United States? No, Your Honor. What's the difference between Cruz and anybody else in the U.S. who has an MS-13 affiliated tattoo? It's more than just the tattoo. It's the tattoo. It's the label of the gang membership. He's on the book. Right. But the label of the gang membership is by virtue of a tattoo because he's denied that he's actually a member of the gang. So the only thing that we have is a tattoo on his hand. So if he has a tattoo on his hand, does that mean then that he is entitled to stay in the United States because of the current situation in El Salvador? And if that's true, doesn't that mean that anybody who fears return to El Salvador can get an MS-13 tattoo on their hand and remain in the United States? No, Your Honor. Specifically to the second part of your question, you can't just get a tattoo and be able to stay in the United States. The I.J. has a job to do. And if someone just got a tattoo for the purposes of staying in the United States, the I.J. would find that out at the hearing. It wouldn't necessarily. Right. But you've got imputed gang membership. Mr. Cruz denies that he's actually a member of the gang. So all we've got is imputed gang membership by people in El Salvador. So how do we know how the Salvadorans will distinguish between people like Mr. Cruz who has a tattoo on their hand in an effort to try and remain in the United States? The difference is it isn't just a tattoo. What else does Mr. Cruz have that will mark him once he returns to El Salvador? It's the fact that he won't just be he will be marked, he is marked, but he also has this parole report. And he is labeled in this country as a gang member, not just by the general population, but the authorities in this country. That is going to follow. That might not follow everybody. If someone doesn't have this parole report, if he's not been labeled as a gang member within the system, there's no stating that it might follow him there. It might follow someone else there. In this case, it's going to follow Mr. Cruz. Counsel, I want to go back to your very first exchange with Judge Hayes on the attempted possession of a stolen vehicle. Are you conceding that issue now, reversing your brief argument? No, Your Honor. We made a specific argument that the attempted possession of a stolen vehicle was not a crime involved in moral turpitude. And therefore, no removability. Based on that. But it was more than that. That was part of the argument. The other part of the argument is that it shows the general lack of careful analysis by the IJ and the BIA, and it goes to that second argument I was talking about. But if you prevail on that argument, all of these other arguments are moot. Well, we still have the aggravated felony. Which is the aggravated felony? Which crime is that? That's the attempted theft. The attempted? Theft. But don't you have cases that you can rely on, like Corona-Sanchez? We don't believe that there was an argument for the attempted theft. The attempted possession of a stolen vehicle is not an aggravated felony. But there's an attempted theft. That's the grand larceny. Yes, the grand larceny. And so then is it the case that you're – you can see there is an aggravated felony. It's the attempted grand larceny. But your argument in the brief with respect to the attempted possession of stolen property was that that was not a crime of moral turpitude. Is that right?  And it's clearly not. And the government hasn't – hasn't sought to dispute that. But the – and the point in the general – But you're conceding removability then based on the aggravated felony. Obviously, you have other defenses like CAT and so forth. Yes. Yes. All right. Very well. And importantly – importantly, that is an important issue because it shows the general lack of carelessness, the carelessness of the IJ and the BIA. Throughout these proceedings, Mr. Cruz has – has proceeded pro se and the IJ has been careless in its analysis. The BIA was the same way with respect to the CAT claim. They simply did not – they've just not given this Court enough to reverse that. You're down to about one minute, counsel. Oh, sorry. The BIA never relied on the possession of stolen property, though, as a crime of moral turpitude, correct? They don't consider it one way or another. Right. I'm going to save the rest of my time, please. You have a little time left, counsel, so we'll – we'll let you have that. We'll hear from the government. Good morning, Your Honors. May it please the Court. Rami Daroja of Hody representing the Attorney General. This petition for review should be denied, Your Honors, because controlling precedent of the Board and this Court compel such denial. Petitioner has stated – has considered removability in this case, so that's no longer an issue, because the Board in this case gave careful and detailed analysis to the issue of an – of the aggravated felony conviction based on the grand – the larceny conviction in the record. The opposing counsel concedes that issue. Yes. Why don't you get to the Catt claim? That's the important one. With respect to the Catt claim, Your Honor, Petitioner's claim is based on an unpublished Board decision, and this Court has held that such decisions cannot be used. You cannot rely on an unpublished Board decision as a basis for your case. We don't know the facts of the case involving Mr. Miguel Perez, whose arm was amputated by – allegedly by the Salvadoran police. We don't, you know, know whether he's similarly situated to Petitioner. Petitioner has not provided any details whatsoever regarding that case that would make it similarly situated to his own situation. Importantly, Petitioner has failed to establish that the government would – the government of El Salvador would breach its duty to intervene and prevent any alleged torture by gang members or the sober – sober negro or even the Salvadoran police, as he alleges. The country reports actually contradict his claim. The 2008 country report indicates that the Salvadoran government has taken active steps to control gang violence, including the prosecution and imprisonment of top-notch police officials who were implicated in the murder-for-hire killing of alleged gang members. And that's in the record at A.R. 1777-78. And Mr. Cruz himself acknowledges this much in his reply brief. The evidence he provided actually in support of his claim actually undermines it. It doesn't establish that a government of El Salvador will breach its duty. And that is the standard on the cat. The government, it's been established in the record. And even the 2000, the most recent country report that he appends to his brief, it's clearly – clearly does not have anything showing that the government would breach its duty of protecting anybody from gang violence. The record is completely silent on that issue. It is Petitioner's burden to establish that the government will breach its duty in this case. Yes. Scalia. Well, as I understand the counsel's argument, she suggests that we should take his entire testimony, since it was not the subject of an adverse credibility determination, take all of his testimony as true. And therefore, she has met her burden. Well, even taking all of Petitioner's testimony as true, which we don't dispute there was no adverse credibility finding, Petitioner still has the burden of establishing that the government will breach its duty to protect him. He has not established that at all. There is nothing in the record to suggest that that will happen. True, Petitioner has given the example of someone who was – whose arm was allegedly amputated in El Salvador because of gang violence, but we do not know the facts of this case. And that alone is not enough. It is not enough to sustain his claim for cat protection for the reasons stated that that decision is an unpublished court decision. We do not have the full facts in that case. Petitioner has not proven that he is similarly situated to this person. This person was in El Salvador, something happened, he was able to come back to the United States, and he was granted cat protection. Again, importantly, the record shows that the Salvadoran government has taken very active steps to combat this issue. It has prosecuted top-notch police officials who were involved in a murder-to-hire killing of alleged gang members. Therefore, Petitioner cannot prove his cat claim. It's – there is nothing in the record. His word alone is not enough. It is not sufficient. He has to be able to take that step to show that the government will breach its duty. He has not been able to do that so far. Also, with regard to the social group issue, because Petitioner – it's unclear because Petitioner seems to waver and say that, you know, they are not addressing that issue anymore. It is not very clear. I'm not very clear on her argument. But basically, the decision in Artiega controls – squarely controls the outcome of this case. And in that case, the – this Court held that because Mr. Artiega's claims, just like Petitioner, ultimately rested on the fact that his tattoo – his tattoos mark him for potential persecution, that he is not – he cannot use that as a claim, as a basis for establishing a claim based on social group. Petitioner attempts to distinguish himself from Artiega by claiming that he has never been a gang member. But that is of no consequence in this case. The Artiega Court specifically stated that disassociating oneself from a group, as Petitioner in this case claims, does not automatically put him in another group as group is meant in the law. And because this category of non-associated or disaffiliated persons in this context is far too unspecific and amorphous to be called a social group, whether that person is tattooed or not, it doesn't – it simply doesn't support his claim whatsoever. It is the government's position that Petitioner has not established that he is a member of a social group just because of his tattoo marks. And he also has not established his cat claim. He – Petitioner has to prove that the government of El Salvador would willfully – would be willfully blind to any attack on him by alleged perpetrators in El Salvador, and nothing in the record supports that position. The government has actively taken steps to control gang violence in El Salvador. Is that based upon recitals in the country report? Pardon me, Your Honor. I see. Are you making that argument based on the country report? Yes, Your Honor. We're basing that on the country report. And Petitioner has not offered anything, any evidence to the contrary to show that the country report maybe omitted certain information or did not state the affairs in El Salvador as it is today. In fact, Petitioner appended to his opening brief the latest copy of the country report to support his claim. But that report is silent on the issue of any gang-related activity in El Salvador. It does not support his claim at all. And because Petitioner has not established that the government will willfully turn a blind eye to his claim, his type of claim has no merit whatsoever. And again, it is the government's position, and based on this Court's published decision, that a reliance on an unpublished board decision does not establish a claim. The decision that the case that he relies on is an unpublished board decision. We do not have the facts in that case. Petitioner has not established that he's similarly situated to the alien in that case who was granted cap protection. And the board, in fact, in that decision had stated that the issue was not whether that Petitioner would be tortured. The issue was whether it was more likely or not, and it had been shown that he had been tortured. But Petitioner claims that when he gets to El Salvador, he will be arrested based on the Manu Duru laws. But Respondent submits that being arrested alone is not torture. He might very well be arrested when he gets to El Salvador based on the rap shoots in the record about his gang-related activity. But that alone is not torture. The government of El Salvador probably has rules in place to process aliens who come in who have been accused of gang-related activity, but that is not torture. The government has to willfully be engaged in inflicting serious harm on the Petitioner, and he has not shown that that will take place in his case. Just based on the fact that the government has taken steps, there have been police officers who have been prosecuted for wreaking – for harming alleged gang members. And so he has not proven his claim at all. And did Mr. Cruz indicate that he needed more time at the hearing? Pardon me? Did Mr. Cruz indicate that he needed more time at his hearing? No, he never indicated that he needed more time at his hearing. He did tell the immigration judge that he was having difficulty speaking, I think, contacting his girlfriend and his father. But he did not specifically indicate that there were some documents that he needed to enter into the record that he couldn't get. But he had the opportunity when he appeared before the board to enter those documents in the record, and he didn't because he had actually entered more documents in the record before the board. And the board basically looked at the record very carefully and analyzed the record, those documents that he entered in the record, in order to make a decision. And going to opposing counsel's statement that the board was careless in this case and did not give petitioner due process. The board actually reminded this case to the immigration judge to look at the issues, to give the petitioner the opportunity to address his asylum withholding and path claim, which the immigration judge did before the case went back to the board. So it's the record does not support that assertion that the board was careless and didn't carefully look at the case at all. Rather, the board gave him the opportunity to present his claims. Petitioners had his day in court. He got due process. His case was properly heard by the board, and the board analyzed all the issues in this case to arrive at, you know, a concise decision on this issue. Opposing counsel also stated that the board's treatment of petitioner's path claim was a terse, short one-paragraph order. The board's decision here, the board doesn't have to write an exegesis on, you know, on an issue. But the board's decision here shows that it fully looked at the issues in this case and made an informed decision as to whether petitioner would be tortured. The board specifically looked into the record, looked into all the documents that petitioner added to his appeal to the board, and made a decision stating that it was insufficient to support his claim. So the board was very, very careful, and it did analyze documents submitted in the first instance to it. In most cases, sometimes the board would say, no, we cannot look at that. But the board looked at Petitioner's pro se appeal and granted him the opportunity to present his claim. And it looked at all the documents that he entered in the record. So it is incorrect to say that the board did not do that. Thank you, counsel. Thank you very much, Your Honor. Ms. Harris, you have a little bit of reserve time. Thank you, Your Honor. I would like to address two points very quickly in the time remaining. First, we're not we haven't jettisoned our argument on particular social group. We've discussed that, as counsel suggested. We've discussed that thoroughly in the briefs. We submit that Arteaga is distinguishable for the reasons that we set forth in the brief. That case is focused mostly on the violence that Arteaga faced. We don't have that here. So we're not jettisoning that argument. Do you want to say something about the country report? You heard counsel's argument. Yes. In response to counsel's argument, the country report talks about the government's position that they are trying to stop gang violence. This isn't a question of gang violence. This is a question of whether the national police, government officials, the national police are persecuting and torturing suspected gang members. We're not talking about gang members hurting other gang members. We're not going there. It's whether the national police or government officials are going to torture people like Mr. Cruz who are suspected gang members. And one last point, if I may, Your Honor, is that counsel talks about that the torture has to be State-sanctioned. It doesn't have to be State-sanctioned. It has to be committed by a government official. The police are prototypical State actors, and they are unquestionably government officials in this case. Thank you, counsel. The case just argued will be submitted for decision.
judges: Hayes, O'scannlain, Bybee